# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Robert Keyes,
    Plaintiff

vs                                    Case No. 1:07-cv-503-HJW-TSH
                                         (Weber, Sr. J.; Hogan, M. J.)

Car-X Auto Service, et. al.,
    Defendants

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 32), Plaintiff's Memorandum In Opposition to Defendants' Motion for Summary Judgment (Doc. 46), and Defendants' Reply. (Doc. 52).

Plaintiff brought this action against his former employer, Defendant Car-X Auto Services, the corporate owner of Car-X, Defendant Gorrepati Service Systems, Inc., and his former Manager at Car-X, Defendant Lee Bailey, alleging claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207 et. seq., the Family Medical Leave Act (FMLA), 29 U.S.C. § 2617, et. seq., Ohio Rev. Code § 4123.90, and Ohio common law. In his Motion for Partial Summary Judgment, Plaintiff contends that he is entitled to summary judgment on the issue of liability with respect to Count One. Specifically, Plaintiff argues that, because it is undisputed that Defendant Car-X failed to compensate him for overtime in excess of forty hours per week, Defendants have violated the FLSA. Defendants contend that they are entitled to the exemption from the overtime wage requirement under 7(i) of the FLSA, 29 U.S.C. § 207(i) because Plaintiff's regular rate of pay exceeded one and one-half times the minimum wage rate and over half of Plaintiff's compensation came from commissions earned on the sale of goods and services.

# FACTUAL BACKGROUND

Gorrepati Service Systems, Inc. ("Car-X") is an Ohio corporation doing business in Ohio under the trade name Car-X Auto Service. It operates seven Car-X locations which provide automobile repair services to consumers. (See Doc. 32, Ex. A, Affidavit of Prema Govind ¶3). Plaintiff was employed by Car-X as an auto technician and performed full service mechanical work on vehicles for Car-X customers. (See Deposition of Robert Keyes, at 7-8, 71-72). Plaintiff was initially hired to work for Car-X at its Reading Road shop location. However, according to Defendants, Plaintiff was transferred to the Glenway Road shop location to be under firmer supervision and management. (Keyes Dep., at 19; Deposition of Christopher Burkhardt, at 131-132).

Defendants claim that Plaintiff was disciplined on several occasions both at the Reading and Glenway shop locations for poor work quality and failing to follow directions from his manager. (Burkhardt, at 131, 134-138; Deposition of Lee Bailey, pp.64-69, Exhibit 6). Some of the infractions for which Plaintiff was disciplined included failure to properly complete basic tasks expected of a technician, apparent apathy with respect to communicating with customers regarding necessary repairs, repeated inappropriate comments in support of his lackluster techniques. (See Deposition of Michael McCowan, at 52, 54, 55-60, 63, 72-73, 74-75; Deposition of Lee Bailey at 134-35).

On December 18, 2006 Keyes worked on a vehicle's exhaust system. (McCowan Dep., at 58.) Plaintiff was specifically told by Bailey to be sure to test drive the vehicle to check the exhaust repair. (McCowan Dep., at 58-59; Bailey Dep., at 58-59, Ex. 6). However, Plaintiff left the shop for the day without test driving the vehicle. Defendants also claim that Plaintiff later drove by the shop in his car, blowing his horn and shaking a can of beer in front of the other technicians who continued to work in the shop. (McCowan Dep., at 59-60). It was later necessary for Plaintiff's co-workers to repair his work for the customer. (Bailey Dep., at 63-66, Ex. 6). On December 29, 2006, Plaintiff failed to back a vehicle out of the shop as instructed and also failed to properly repair the vehicle resulting in other technicians having to perform the work. (Bailey Dep., at 68-69, Ex. 6).

On December 29, 2006, Plaintiff injured himself picking up an SUV tire. (Deposition of Robert Keyes at 37). At the time that he felt the pull in his groin, Keyes was by himself at the far end of the Glenway shop. (Keyes Dep., at 37-38). Plaintiff informed Bailey that he had injured

2

himself and needed to see a doctor because he felt "the same pull [he] felt before."
(Keyes Dep., at 38, 93). Bailey instructed Plaintiff to go home. (Id. at 38). Plaintiff did not visit a doctor prior to reporting back to work the following morning of December 30, 2006. (Keyes Dep., at 38-40). Plaintiff performed all of his regular job duties that day. (Id. at 41). At the end of the work day on December 30, 2006 Car-X terminated Plaintiff for poor job performance. (Keyes Dep., at 8, 42; Bailey Dep., at 143).

Prior to December 29, 2006, Keyes had experienced a "pull" on two separate occasions. In 2004, Keyes picked up a tire and felt a "pull" in his stomach. (Keyes Dep., at 27). On that occasion, Plaintiff went to the hospital the following morning and learned that he had a double hernia. He subsequently underwent surgery. (Id. at 27). Plaintiff was provided with adequate leave for his recovery and was assigned to light office duty upon his return to work. (Id., at 28, 31-32.) Thereafter, in October of 2006, Plaintiff experienced a pull for a second time while he was down on his hands and knees trying to set a truck up on a lift. Bailey asked him if he was all right. When Plaintiff responded in the negative, Bailey recommended that Keyes sit down for a while, go home early and to see how he felt in the morning. Plaintiff went home, applied ice and took Advil. He did not contact a physician regarding this injury. Upon returning to work the following morning, Plaintiff stated that he felt "a lot better" and proceeded to perform all of his regular job duties without any restrictions. This remained the case until his termination in December 2006. (Keyes Dep., at 33-36.)

## OPINION

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate

3

those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In order to establish a claim for interference with rights under the FMLA, Plaintiff must show that: 1) he was an "eligible employee" under 29 U.S.C. § 2611(2); 2) Defendant is an "employer" under 29 U.S.C. § 2611(4); 3) he was entitled to leave under the FMLA; 4) he gave Defendant notice of his intention to take leave; and 5) Defendant denied him FMLA benefits to which he was entitled or otherwise took an unlawful action against him. *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). "The employee must establish these elements by a preponderance of evidence." *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 335 (6th Cir. 2005). Moreover, the Sixth Circuit broadened the fifth element to include those situations where an employer used the exercise of FMLA leave as a negative factor in an employment action. In the present case, Plaintiff alleges that Defendant based his termination upon Plaintiff's request for leave pursuant to the

FMLA. Because we find that Plaintiff cannot meet the fourth element, we find that Plaintiff has failed to establish a claim for interference with his rights under the FMLA.

Citing *Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847, 853 (8th Cir. 2002), Plaintiff argues that, at the point that Plaintiff informed Bailey that he "felt the same pull as before" and needed to see a doctor, Car-X had a duty to determine whether Plaintiff required FMLA leave. We disagree. Notwithstanding the fact that *Spangler* is not binding authority, the court in *Spangler* specifically held that, "when an employee provides the employer with notice that she may be in need of FMLA leave before the fact of the absence, it then becomes the employer's duty to determine whether or not the employee actually requires FMLA leave...." *Id.* at 853. Moreover, the Sixth Circuit has made it clear that, it is incumbent upon the employee to first notify the employer of his need for FMLA leave. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 423-24 (6th Cir. 2004). The employee must provide his employer with sufficient information from which the employer can "reasonably conclude that a [serious health condition] has occurred." *Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005); *see also Alston v. Sofa Express, Inc.*, No. 2:06-cv-491, 2007 WL 3071662 at *8 (S.D. Ohio Oct. 19, 2007). The record evidence indicates that Plaintiff failed to provide such information or notice.

While Plaintiff states that, due to the New Years' holiday, he was unable to be seen immediately by his doctor, Plaintiff did not request any leave at that time. Rather, Plaintiff reported to work the following day, completing such with no complaints or further incidents. (Keyes Dep., at 38, 40-41). Upon being seen by his physician four days following his injury, Plaintiff was released for work with no restrictions. (Id. at 63). Plaintiff did not receive any work restrictions until after his outpatient surgery on April 30, 2007. (Id. at 64). Merely stating his need to see his doctor is simply not sufficient to place Defendant on notice of his need for FMLA leave. *See Brenneman*, 366 F.3d at 423-424 (Employee's comments that he "wasn't doing well and ...wouldn't be in" on day of absence not sufficient notice under the FMLA); *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001)(Calling in "sick" did not reasonably make employer aware of need for FMLA leave).

Plaintiff's argument that his past serious health condition, namely his hernia in 2004, put Defendant on notice of his need for FMLA leave in 2006, is equally unavailing. There is no evidence that Plaintiff had any further complications following his 2004 surgery aside from his 10-

day and temporary assignment to light duty work. (Keyes Dep., at 31-32). Moreover, evidence that two co-workers were aware of Plaintiff's prior injury and/or witnessed Plaintiff's current injury does not serve to place Defendant management on notice of Plaintiff's need for FMLA leave.

Lastly, it is immaterial whether Plaintiff's health condition was later established to be serious; the fact remains that Plaintiff failed to give Defendant notice of his need for leave, under the FMLA, or otherwise. For this reason, we find that Plaintiff has failed to satisfy the fourth element of his claim for interference with his rights under the FMLA. Defendants are, therefore, entitled to summary judgment with respect to this claim.

In Count Two of his Amended Complaint, Plaintiff asserts a claim for discrimination and retaliation in violation of the FMLA. To establish a claim for discrimination/retaliation under the FMLA, Plaintiff must show that: 1) he engaged in protected activity under the FMLA, that is, he availed himself of a protected right under the FMLA; 2) Defendants knew of this protected activity; 3) Defendants took adverse action against Plaintiff; and 4) there was a causal connection between the protected activity and the adverse action. *Arban v. West Publishing Corp.*, 345 F.2d 390, 404 (6th Cir. 2003).

In light of our finding above, we find that Plaintiff cannot satisfy the first element of this *prima facie* case. Plaintiff failed to establish that he exercised any FMLA rights with respect to his 2006 injury. Plaintiff did not request leave nor did he provide notice to Defendants of his need for such. (*See supra* pp. 4-6). For this reason, we find that Plaintiff has failed to establish a prima facie case with respect to his FMLA discrimination/retaliation claim.

Lastly, Defendants contend that Car-X acted in good faith and with a reasonable belief that it was establishing a valid commission plan under the FLSA. Defendant argues that Car-X affirmatively sought guidance from legal counsel as to whether the compensation plan for its employees was proper. Plaintiff, on the other hand, argues that, because Defendants failed to provide accurate information to legal counsel, they cannot rely on counsel's opinion letter to establish a good faith defense. *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 72 (2nd Cir. 1997). While Plaintiff correctly points out the inaccuracy of Car-X's statement to counsel that, "all of the technicians' compensation comes from commissions on goods or services," this statement was not offered to counsel in a vacuum. Defendants' evidence, on the other hand, indicates that Car-X

6

provided counsel with additional information regarding its compensation plan and received feedback that its plan conformed to the exemption under § 207(i) of the FLSA. (Govind Dep., at 122-24; Govind Aff. ¶ 9). For this reason, we find that a genuine issue of material fact exists as to whether Defendant Car-X acted in good faith and with reasonable belief that it was establishing a valid commission plan under the FLSA. Summary judgment is not appropriate, therefore, with respect to the issue of liquidated damages.

## IT IS THEREFORE RECOMMENDED THAT

1) Defendants' Motion for Summary Judgment (Doc. 32) be GRANTED with respect to Plaintiff's FMLA claims and DENIED with respect to Plaintiff's request for liquidated damages.

September 30, 2009

s/Timothy S. Hogan
Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING
## OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) in the event this Report is served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).